## O'Hara v. United Gas Improvement Co.

*W. D. Valente*, for plaintiff.

*Richard P. Brown, Jr.*, for defendants.

ALESSANDRONI, P. J., June 19, 1963.—This is an action in equity to enforce pension rights. Defendant

denied that there was any contractual obligation on its part and alleged that the payment of the pension being a gratuity it was completely within its prerogatives to deny same. The matter came on for hearing. From the pleadings and testimony adduced at the hearing the chancellor makes the following

*Findings of Fact*

1. John P. O'Hara, died December 15, 1961, at the age of 52, having been employed by Philadelphia Gas Works (hereinafter called "PGW") in excess of 35 years and being, at the time of his death, a supervisory employe.

2. He became ill in the middle of February and was absent from work for one week. Thereafter, he became ill in March and after April 14, 1961, he never returned to work.

3. O'Hara met the requirements of age and length of service for disability retirement.

4. O'Hara was not advised by his physician that he was suffering from cancer and that it was a terminal illness.

5. Mrs. O'Hara was not informed of her husband's condition until shortly before his death and never accepted the idea of his approaching death until the inevitable happened.

6. O'Hara knew of the existence of the pension system, its operation and its options.

7. O'Hara was a member of the union negotiating committee; although at his death he was a supervisory employe.

8. Based on the information which Dr. Howard Johnson, PGW's Medical Director, and the company's visiting nurse obtained from Mr. O'Hara, to the effect that he had chest difficulty and had had 30 X-ray treatments, Dr. Johnson, on October 16, 1961, sent a memorandum to the retirement board indicating that it appeared that O'Hara would not be able to return

to work, and the memorandum recommended that he be given the opportunity of disability retirement whenever convenient to the company's management.

9. On October 18, 1961, the retirement board authorized the company's employement counselor to visit Mr. O'Hara and ascertain whether he was disposed to a medical retirement or not, without directly initiating the matter with Mr. O'Hara.

10. On November 6, 1961, the retirement board again instructed Mr. Mitchell, the employe counselor, and Mr. Dilman, Mr. O'Hara's supervisor, to visit Mrs. O'Hara and ascertain Mr. O'Hara's attitude toward retirement, without presenting retirement information unless it was requested.

11. On November 29, the retirement board again instructed Mr. Mitchell to visit Mrs. O'Hara to review with her Mr. O'Hara's status with the company.

12. Before Mr. Mitchell could make the arrangements for that visit, Mrs. O'Hara contacted him for retirement information and on December 10, Mr. Mitchell met with Mrs. O'Hara and her nephew and discussed the various options which were available to Mr. O'Hara if he elected to retire on disability.

13. At the time of his visit Mr. Mitchell advised Mrs. O'Hara that Mr. O'Hara's retirement could not take place before January 1, 1962.

14. This advice was in accordance with a long standing and unvarying practice of the company that all retirements become effective on the first day of the month following approval.

15. Mr. O'Hara apparently executed the survivor's benefit option December 10, and Mrs. O'Hara thereafter gave it, signed but unwitnessed, to Mr. Valente, her attorney.

16. Mr. Valente called Mr. Mitchell December 14, 1961, stating that he had the signed application in his hand and that Mr. O'Hara's condition was "in ex-

tremis" and inquiring if anything could be done to hasten the retirement action.

17. Mr. Mitchell stated that the option should be witnessed and that nothing could be done about making retirement effective prior to January 1, 1962.

18. Supervisory employes received the same pension rights as those who were members of the union which negotiated the complete plan.

## Discussion

The complaint in this matter prays for a decree compelling performance of an alleged pension obligation by defendants. It has been agreed that the case against the individual defendants be dismissed since they were only acting on behalf of defendant United Gas Improvement Company.

The pension fund in this case is not a fund in the usual sense but is paid out of the receipts of the operation of the gas works. Prior to 1955, there was no formalized plan for retirement; when an employe reached retirement age, usually at age 70, he received two per cent of his aggregate earnings as an annual pension. In 1955, the present plan was formalized after negotiation with the union.

The crux of this matter is the propriety of defendant's action. A great volume of testimony was adduced to the effect that defendant company in all cases tried to act with the utmost fairness to all concerned. There was testimony that as a matter of human relations a merciful policy was adopted whereby the company would not initiate disability retirement because of the possible deleterious effect on the health and morale of an employe who was seriously ill. The company felt that initiation of such action by it could easily destroy the employe and instead of assisting his recovery could well have the opposite effect. Thus its policy was unvarying and inflexible in its application; the policy was applied without regard to the circumstances of

the individual case. As in this case, however, the action could and did have the opposite effect, its application in this case was demonstrably unfair.

Incidentally, it does not appear in the record that the employes of defendant company were informed that disability retirement could only be had upon application by the employe. The enunciation of this policy to the employes would have made them aware that they would have to act if they were to obtain the benefits of the disability retirement.

The company was advised as early as October 15, 1961, that O'Hara was probably suffering from a terminal illness. This information was received from Dr. Johnson, its medical director. Nevertheless it argues that it had no certain knowledge of his condition. The knowledge was readily available, if desired, and Dr. Johnson's report is quite explicit to the effect that O'Hara had lung cancer and probably a metastasis, i.e., a rapid spread of the malignancy.

On two occasions after this date the retirement board suggested that two counselors go out to see O'Hara with reference to the possibility of disability retirement, but under no circumstances were they to initiate the discussion. Under the circumstances of this case this direction must be considered arbitrary; because as a matter of fact when the retirement board actually considered O'Hara's case on December 1, 1961, there was no formal request for retirement. They apparently acted on their own motion and stated that as a condition of the retirement, O'Hara would have to survive until January 1, 1962. Defendant has thus violated its own policy and has offered no explanation for doing so; there is not a scintilla of evidence to support the conclusion that O'Hara formally requested or initiated retirement consideration other than a telephone request for information by Mrs. O'Hara.

As a matter of record, O'Hara died December 15, 1961. There is no requirement in the pension plan that disability retirement take effect on the first of the month next succeeding, as is the case with compulsory retirement at age 65.

The company argues that were they to apply the rule differently, i.e. disability retirement is not to be initiated except by the employe, this would discriminate against other employes of the company because the amount of pension is actuarially computed on the basis of age 65 regardless of the age of the employe who retires on disability. In other words, there is no deduction or change in the amount of the pension payable because an employe has not reached age 65. This they say would give an unfair advantage to an employe who is thinking of retiring on disability.

However, what could be more unfair than speculation by the gas company that the employe who is seriously ill would not survive to a certain date and thereby the company would avoid paying any pension whatsoever. In this situation defendant company knew two months in advance that O'Hara had a terminal illness. It could be inferred, although we do not say so, that they were gambling that he would not survive until January 1, and thereby the company would be relieved of paying any pension.

We do not charge bad faith in these circumstances because the record amply demonstrates its concern with being fair and just. But we cannot help but feel that an employe who has given 35 years of his life to this operation should not be deprived of his pension nor should his widow be deprived of her survivor's pension because of an inflexible application of a rule which appears on the surface to be fair but which in its operation can be inhumane, if not cruel. The circumstances are such that there ought to be some room for flexibility.

We can only conclude that the action of the gas company's retirement board in this case was arbitrary and that the board should have acted sooner than it did. It must be emphasized that it finally acted upon its own motion, contrary to its own policy.

Defendant's position in this matter is that the payment of the pension to employes of the gas works was a complete gratuity and hence, it could impose any conditions it saw fit to impose. This position is anachronistic in this day and age. The existence of an adequate pension plan is an important consideration in obtaining and retaining competent employes.

In the factual situation here present, the existence of a pension plan since the 1930's, although not as formalized, has obviously had a salutary effect on the employer-employe relationship. If it were entirely gratuitious, as claimed, then defendant could grant or withhold same at its whim or caprice. It does not claim that right; what it does claim is that its present inflexible enforcement of rules and regulations is eminently fair and reasonable and that it is the fall of the cards of life which determines.

We think the situation here present is somewhat analogous to that set forth in Langer v. Superior Steel Corp., 105 Pa. Superior Ct. 579, which applied the doctrine of promissory estoppel. Certainly defendant has obtained the benefits it foresaw when it initiated retirement payments and it should now be estopped to deny the widow of the decedent benefits to which she would have otherwise been entitled. Note that if O'Hara had lived another 16 days, Mrs. O'Hara would have received the benefits without question.

The inflexible application of rules can in and of itself be unfair. While it may in some circumstances be cruel to discuss disability retirement, yet a point is reached where under the circumstances action is urgently required. Defendant's concern about the wel-

fare of its employes should be exercised, when necessary, to protect its employes' survivors. The thought of imminent demise is not a cheerful one; indeed, many members of the medical profession refrain from disclosing the existence of a terminal disease.

Once this knowledge is communicated, action and speed by the company is indicated. As noted hereinbefore the company has obtained the benefit of long and continued service of a competent and faithful employe. It should not be in the position of delaying action in the case of an employe who is desperately ill. Each case should be considered on its own facts and defendant's failure to act with despatch is manifestly unfair and not in accordance with the realities of the case.

### Conclusions of Law

1. The court has jurisdiction of the parties and subject matter.

2. Defendant's action in this case was unjust and inequitable.

3. Defendant having had a pension plan for so many years is now subject to the doctrine of promissory estoppel in denying pension rights.

4. Plaintiff is entitled to relief.

### Order

And now, to wit, June 19, 1963, the court enters the following

### Decree Nisi

And now, it is ordered, adjudged and decreed that defendant is ordered to pay plaintiff a widow's survivor pension in accordance with its retirement plan and option elected thereunder from December 10, 1961, with interest on the delayed payments.

The prothonotary is directed to give notice to the parties or their counsel of the filing of this decree nisi, and unless exceptions are filed thereto within 20 days from the date hereof, this decree shall become a final decree.